SHAWN N. ANDERSON, United States Attorney
MIKEL W. SCHWAB, Chief, Civil Division
JESSICA F. WESSLING, Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Telephone/Facsimile: (671) 472-7332/(671) 472-7215

BRIAN BOYNTON, Acting Assistant Attorney General
R. MICHAEL UNDERHILL, Attorney in Charge
West Coast and Pacific Rim Office
VICKEY L. QUINN, Trial Attorney
FRANK J. ANDERS, Trial Attorney
Torts Branch, Civil Division
Aviation, Space & Admiralty Litigation
U.S. Department of Justice
450 Golden Gate Avenue, P.O. Box 36028
San Francisco, CA  94102
Telephone/Facsimile: (415) 436-6630/(415) 436-6632
Email: mike.underhill@usdoj.gov;
    vickey.l.quinn@usdoj.gov; frank.j.anders@usdoj.gov

Attorneys for Plaintiff
United States of America

**FILED**
Clerk
District Court

MAY 14 2021

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CV 21-00013 |
| | ) |
| Plaintiff, | ) IN ADMIRALTY |
| vs. | ) |
| | ) |
| PRIDE KEEN LIMITED; IMPERIAL | ) VERIFIED COMPLAINT OF THE |
| PACIFIC INTERNATIONAL LLC d/b/a | ) UNITED STATES |
| BEST SUNSHINE INTERNATIONAL; | ) |
| IMPERIAL PACIFIC INTERNATIONAL | ) |
| HOLDINGS, LIMITED. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| _____ | ) |

VERIFIED COMPLAINT                    1                    Case No.:

Plaintiff, the United States of America, alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.      This is a case of admiralty and maritime jurisdiction against Defendants PRIDE KEEN LIMITED; IMPERIAL PACIFIC INTERNATIONAL LLC, d/b/a BEST SUNSHINE INTERNATIONAL; and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS, LIMITED, *in personam* (collectively "DEFENDANTS"), as hereinafter more fully appears, and within Rule 9(h) of the Federal Rules of Civil Procedure.

2.      The United States expressly reserves the right to amend this Complaint to, *inter alia*, add additional parties and assert additional claims against such additional parties and the present DEFENDANTS herein.

## JURISDICTION AND VENUE

3.      The United States is authorized to bring this suit and the Court has jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1345 and 33 U.S.C. § 2717.

4.      Venue is properly in this Court pursuant to, *inter alia*, 28 U.S.C. § 1391 and 33 U.S.C. § 2717.

5.      The United States also brings this action on behalf of the Oil Spill Liability Trust Fund (hereafter "Fund"), pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*, to recover any and all removal costs and damages incurred directly by the Fund, any removal costs and damages incurred by the Fund through compensation paid to any claimant, and all costs incurred by the Fund by reason of any such claims, including

interest, prejudgment interest, adjudicative costs, and attorney's fees.  Pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2712(f), the United States has acquired by subrogation, or may in the future acquire by subrogation, the rights of any claimant or State paid compensation from the Fund, and the United States specifically reserves the right to amend this Verified Complaint to assert any or all such subrogated rights and claims.

## DEFENDANTS

6.      At all times material herein, the passenger yacht GRAND MARIANA (hereafter "GRAND MARIANA" or the "VESSEL") was a vessel and was operated in, *inter alia*, navigable waters of the Pacific Ocean in and near Saipan, Commonwealth of the Northern Mariana Islands, and at all material times hereto was within the jurisdiction of this Court with respect to the matters alleged in this Complaint.

7.      At all times material herein, defendant PRIDE KEEN LIMITED (hereafter "PRIDE KEEN"), pursuant to information or belief, was a foreign corporation or entity, presently believed to have been incorporated in the British Virgin Islands, and had a place of business and/or was doing business within this district and within the jurisdiction of this Court, including but not limited to, through *inter alia*, the ownership, chartering, and operation of the GRAND MARIANA at the time of, and with respect to, the matters sued upon herein.

8.      At all times material herein, defendant PRIDE KEEN, based upon information and belief, was the owner of the GRAND MARIANA.

9.     At all times material herein, defendant PRIDE KEEN, based upon information and belief, was the demise charterer of the GRAND MARIANA.

10.    At all times material herein, defendant PRIDE KEEN, based upon information and belief, was the owner *pro hac vice* of the GRAND MARIANA.

11.    At all times material herein, defendant PRIDE KEEN, based upon information and belief, was the operator of the GRAND MARIANA.

12.    At all times material herein, defendant PRIDE KEEN, based upon information and belief, controlled the GRAND MARIANA.

13.    At all times material herein, defendant IMPERIAL PACIFIC INTERNATIONAL LLC, d/b/a/ BEST SUNSHINE INTERNATIONAL (hereafter "IPI CNMI"), pursuant to information or belief, was a corporation or entity, presently believed to have been located in Saipan, had a place of business and/or was doing business within this district and within the jurisdiction of this Court, including but not limited to, through *inter alia*, the ownership, chartering, and operation of the GRAND MARIANA at the time of, and with respect to, the matters sued upon herein.

14.    At all times material herein, defendant IPI CNMI, based upon information and belief, owned the GRAND MARIANA.

15.    At all times material herein, defendant IPI CNMI, based upon information and belief, was the demise charterer of the GRAND MARIANA.

16.    At all times material herein, defendant IPI CNMI, based upon information and belief, was the owner *pro hac vice* of the GRAND MARIANA.

VERIFIED COMPLAINT                    4                         Case No.:

17.   At all times material herein, defendant IPI CNMI, based upon information and belief, operated the GRAND MARIANA.

18.   At all times material herein, defendant IPI CNMI, based upon information and belief, controlled the GRAND MARIANA.

19.   At all times material herein, defendant IMPERIAL PACIFIC INTERNATIONAL HOLDINGS, LTD. (hereafter "IPI HOLDINGS"), pursuant to information or belief, was a corporation or entity, presently believed to have been located in Hong Kong, had a place of business and/or was doing business within this district and within the jurisdiction of this Court, including but not limited to, through *inter alia*, the ownership, chartering, and operation of the GRAND MARIANA at the time of, and with respect to, the matters sued upon herein.

20.   At all times material herein, defendant IPI HOLDINGS, based upon information and belief, owned the GRAND MARIANA.

21.   At all times material herein, defendant IPI HOLDINGS, based upon information and belief, was the demise charterer of the GRAND MARIANA.

22.   At all times material herein, defendants IPI HOLDINGS, based upon information and belief, was the owner *pro hac vice* of the GRAND MARIANA.

23.   At all times material herein, defendant IPI HOLDINGS, based upon information and belief, operated the GRAND MARIANA.

24.   At all times material herein, defendant IPI HOLDINGS, based upon information and belief, controlled the GRAND MARIANA.

25.     At all times material herein, and by reason of the matters alleged in this Complaint, defendant PRIDE KEEN is a "responsible party" within the meaning of the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*

26.     At all times material herein, and by reason of the matters alleged in this Complaint, defendant IPI CNMI is a "responsible party" within the meaning of the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*

27.     At all times material herein, and by reason of the matters alleged in this Complaint, defendant IPI HOLDINGS is a "responsible party" within the meaning of the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*

28.     At all times material herein, DEFENDANTS PRIDE KEEN LIMITED; IMPERIAL PACIFIC INTERNATIONAL LLC, d/b/a BEST SUNSHINE INTERNATIONAL; and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS, LIMITED, as well as other persons or entities whose identities are not yet known, were at all material times, and pursuant to information or belief, acting as agents and/or alter egos of each other with respect to the matters alleged in this Complaint and are therefore responsible and liable, jointly and severally, for all of each of the others' obligations, acts, omissions, and strict liability with respect to the matters alleged in this Complaint and action.

29.     This Complaint herein does not presently assert claims for natural resource damages.  The United States expressly reserves the right to amend this Complaint to add such claims for natural resource damages.

VERIFIED COMPLAINT                    6                    Case No.:

30.     This Complaint herein does not presently assert claims for civil penalties. The United States expressly reserves the right to amend this Complaint to add such claims.

31.     The United States expressly reserves the right to amend this Complaint to, *inter alia*, add additional parties and assert additional claims against such additional parties and the present DEFENDANTS herein.

## GENERAL ALLEGATIONS

32.     The GRAND MARIANA was a 123.7 foot, 444 gross ton 12-passenger yacht built on or about September 1, 2003, and was flagged in the Cayman Islands.  At all times material herein, the VESSEL was in or near the Port of Saipan.

33.     Sector Guam, United States Coast Guard, has an area of responsibility (AOR) in the Western Pacific that includes the Commonwealth of the Northern Mariana Islands (CNMI).  This area is subject to frequent heavy weather, including the potential for organized, tropical cyclones classified by maximum sustained wind speeds.  In the Eastern Hemisphere, these cyclones are called typhoons, and they can form and intensify rapidly. The foregoing facts concerning the existence of typhoons and their attendant winds and weather, as well as the risk such typhoons pose to vessels, are well known and foreseeable, particularly in the Western Pacific, including the CNMI.

34.     Based upon the meteorological conditions in the Sector Guam AOR, the typhoon season for the Sector Guam AOR extends from January 1 through December 31. Therefore, the Sector Guam AOR remains in Port Heavy Weather Condition (PHWC)

VERIFIED COMPLAINT                    7                    Case No.:

WHISKEY as a default condition.  Under PHWC WHISKEY, gale force winds (34 knots or 39 mph) are predicted to arrive within 72 hours.

35.     Changes to PHWCs are communicated throughout the port community though a variety of means.  Within the CNMI, changes to PHWC are distributed via email to port community members from an email distribution list maintained by the CG Marine Safety Detachment (MSD) Saipan.  That email distribution list is updated upon request from a member of the port community or at the discretion of MSD Saipan.  Additionally, changes to PHWCs are announced at briefings in the CNMI emergency operational center. Lastly, MSD Saipan personnel conduct port assessments after each PHWC change. Vessels identified in port during this assessment are contacted and reminded to make appropriate preparations for heavy weather or to prepare to leave port.  Vessel owners failing to comply with the direction provided by MSD Saipan are subject to Coast Guard Captain of the Port ("COTP") orders mandating their compliance.

36.     COTP orders are issued pursuant to authority under the Ports and Waterways Safety Act, which at the time of the incident sued upon herein was codified at 33 U.S.C. § 1221 *et seq.*  The statute is implemented by the Federal Code of Regulations and, pertinent here, 33 CFR Part 160 *et seq.*  Specifically, 33 CFR 160.105 requires "[e]ach person who has notice of the terms of an order issued under this subpart must comply with that order."

37.     Additionally, Apra Harbor/Port of Guam, Tanapag Harbor/Port of Saipan, Port of Rota, and the Port of Tinian are not considered safe havens during a typhoon due to their low topography.  Specifically, these ports do not provide adequate windbreak or

VERIFIED COMPLAINT                              8                              Case No.:

barriers against tidal surges; therefore, there is no harbor of refuge within the Sector Guam Captain of the Port (COTP) AOR.

38.     As a result, Sector Guam has determined that the risk of damage to the ports during heavy weather is minimized when the number of commercial vessels in port is decreased and requires all ocean-going commercial vessels and ocean-going tug/barge combinations over 200 gross tons (GT) generally be required to depart the port by order of the COTP when heavy weather approaches.  However, if any vessels 200 GT or over are unable to depart the port, that vessel must request a waiver from the COTP to remain in port by submitting a "Remaining in Port Checklist" which identifies the vessel's need to remain in port and provides important information, such as the vessel's location, amount of fuel on-board, and operational status of the vessel's machinery (main engines, generators, bilge pumps, firefighting pumps, *etc.*).

39.     On October 22, 2018, Sector Guam upgraded the risk within the ports of Guam and CNMI and established PHWC X-RAY in advance of Typhoon Yutu.  PHWC X-RAY indicates sustained gale force winds (39–54 mph/34–47 knots) from a tropical or hurricane/typhoon force storm that is predicted to make landfall at the relevant port within 48 hours. Further, vessels within the ports of Guam and CNMI were advised to prepare for PHWC YANKEE, which they estimated would be issued on October 23, 2018.

40.     The CG Sector Guam PHWC X-RAY order was distributed to the CNMI port community via email.   There were four individuals representing the GRAND MARIANA on the email distribution, including W. Ordosgaiti, M. Lesueur, R. White and

VERIFIED COMPLAINT                    9                    Case No.:

P. Krause. Additionally, Mr. Sean Rosen, was also notified of the PHWC X-RAY order via email.

41.    The order established that upon setting PHWC YANKEE, all vessels 200GT and over were required to depart port or request a waiver from the COTP to remain in port by submitting a Remaining in Port Checklist.

42.    During their port assessment, CG Marine Safety Detachment (MSD) Saipan discovered the GRAND MARIANA in port and not ready to depart port in advance of Typhoon Yutu.  As a result, MSD Saipan issued a Notice of Federal Interest (NOFI) to PRIDE KEEN, advising it of the GRAND MARIANA's substantial threat to discharge oil into Saipan Harbor and of PRIDE KEEN's responsibilities and financial liability in the event of an oil spill from the vessel.

43.    On October 23, 2018, Sector Guam established PHWC YANKEE in advance of Typhoon Yutu within the ports of Guam and CNMI, which required all vessels greater than or equal to 200 GT to depart port or to have obtained written authorization from the COTP prior to the establishment of PHWC YANKEE to remain in port.

44.    In addition, the order established that upon setting PHWC ZULU, all ports and marinas would be closed and all cargo/bunkering operations within the port must stop. PHWC ZULU indicates that sustained gale force winds (39–54 mph/34–47 knots) from a tropical or hurricane/typhoon force storm are predicted to make landfall at the port within 12 hours.

45.     The GRAND MARIANA failed to depart port at the direction of the COTP and failed to request a waiver to remain in port.

46.     As a result, Sector Guam issued an Administrative Order to PRIDE KEEN which required the removal of all fuel from the GRAND MARIANA's fuel tanks, engines, fuel lines, and any other potential sources onboard that may have oil products in them in advance of the impending typhoon and prior to shifting to the designated mooring.

47.     PRIDE KEEN failed to comply with the Administrative Order.

48.     Later that day, *i.e.*, October 23, 2018, Sector Guam established PHWC ZULU within the ports of Guam and CNMI, which closed all ports and marinas and stopped all cargo/bunkering operations within the port.

49.     On October 24, 2018, the GRAND MARIANA had failed to go to sea and had failed to seek (or be granted) a waiver.  Instead she was moved to a mooring within Tanapag Harbor, but due to deteriorating weather, it was deemed unsafe for divers to properly moor the vessel as desired.  As a result, the vessel was anchored within the lagoon with two anchors set out to attempt to secure her position.

50.     In the early hours of October 25, Typhoon Yutu made landfall.  The GRAND MARIANA broke loose of her moorings and ran hard aground approximately 170 meters off the beach of American Memorial National Park, and in the Tanapag Harbor, said waters constituting navigable waters of the United States.  At the time of the grounding, the GRAND MARIANA contained approximately 15,500 gallons of fuel.

51.     Defendants failed to timely notify the Coast Guard of the incident.

VERIFIED COMPLAINT                         11                         Case No.:

52.     On October 26, 2018, CG Sector Guam received reports from its Marine Safety Detachment in Saipan about the VESSEL's grounding. As the Federal On-Scene Coordinator ("FOSC"), Sector Guam declared the VESSEL a substantial threat of oil pollution and accessed the Oil Spill Liability Trust Fund ("OSLTF"), initially for monitoring and oversight. The FOSC established a Unified Command ("UC") consisting of several federal and local stakeholders, and representatives of the VESSEL owner. The FOSC also issued an Administrative Order on that day, requiring PRIDE KEEN to immediately remove the fuel from all tanks, engines, fuel lines and all other sources onboard the GRAND MARIANA that contained oil within 24 hours, i.e. by October 27, 2018. In addition, the FOSC directed that any salvage plans first undergo a full environmental impact assessment, and be approved by the USCG.

53.     On October 26, 2018, PRIDE KEEN responded and hired OSROCO and T&T Marine to assess the damage sustained by the GRAND MARIANA and to remove the 15,500 gallons of fuel, which posed a substantial threat of discharge into Tanapag Harbor and the adjoining shorelines.  A survey of the vessel confirmed that the vessel was hard aground and identified three cracks in the hull with free communication with the sea.

54.     PRIDE KEEN failed to meet the deadline established within the Administrative Order and was provided additional time to continue working with their insurance company in an effort to secure funding for their oil spill response organization (OSRO) and remove the fuel from the vessel.  However, even with the extra time provided by Sector Guam, PRIDE KEEN's efforts to remove the fuel from the vessel were

unsuccessful as they failed to execute a contract with OSROCO and T&T Marine and provided inconsistent answers to the FOSC when questioned about their response efforts.

55.     Meanwhile, the substantial threat of discharge of oil from the VESSEL did not abate and instead worsened.  For example, a dive survey in November revealed that hull damage had increased significantly since the initial survey of damage.  From approximately November 14-16, 2018, divers patched the accessible hull breaches, as responders continued pumping the VESSEL's accessible compartments. Divers placed a temporary patch on the port side hull, but could not access the openings on the underside, rendering the patches virtually useless. Skimming operations were likewise met with mixed success. Responders were unable to access fuel tank manholes in the guest accommodation area due to hydrostatic pressure and additional flooding, and the spaces that were pumped flooded by the following day.

56.     On November 22, 2018, Sector Guam issued an Administrative Order to PRIDE KEEN summarizing that the owner's previous actions to abate the pollution threat were unsatisfactory and as a result, Sector Guam had assumed responsibility for the response.  Additionally, because all the oil had not been removed from the GRAND MARIANA, the vessel still posed a substantial threat to discharge oil into a navigable waterway.  PRIDE KEEN ultimately failed to comply with this Administrative Order, as well.

57.     The November 22nd Administrative Order required PRIDE KEEN to Activate its "Vessel Response Plan" ("VRP"); produce proof of a valid contract with a

VERIFIED COMPLAINT                    13                    Case No.:

competent company by 1800 (CHST) on November 24, 2018 to remove the remaining threat of a discharge of oil to the waters of the United States – including taking immediate actions necessary to repair, refloat, or dismantle the vessel and remove it from its current location and relocate it to a place suitable for disposal or repair; conduct a full environmental impact assessment and obtain necessary federal and territory environmental permits to carry out the plan; provide any proposed salvage plans or deconstruction/wreck removal plans in writing to the cognizant Coast Guard on scene representative and territory on scene coordinator;  and provide the Unified Command immediate notification of any delays incurred that impact the completion of this project.

58.     On November 23, 2018, PRIDE KEEN sought reconsideration of Sector Guam's November 22, 2018, Administrative Order.  On November 24, 2018, Sector Guam responded to PRIDE KEEN's letter and reiterated the intent of their Administrative Order which was to afford PRIDE KEEN the opportunity to assume responsibility for the remaining pollution removal, to include removing the VESSEL from its current location. Otherwise, removal of pollutants via destruction of the VESSEL in-situ would be requested.

59.     Additionally, Sector Guam's order to PRIDE KEEN to activate its VRP was explained as an effort to assist PRIDE KEEN in meeting the expectations of the order. Specifically, PRIDE KEEN's VRP plan had detailed information about the capabilities and resources of PRIDE KEEN's pre-determined, contracted oil spill removal organization and the contracted salvage, marine firefighting and lightering company.   However, and

VERIFIED COMPLAINT                    14                          Case No.:

throughout the response to the casualty, there were several questions by various PRIDE KEEN representatives relating to general response operations, expectations and requirements that already were clearly outlined within PRIDE KEEN's VRP.

60.     Throughout the response the Coast Guard continually reminded PRIDE KEEN's representatives of its obligations to activate their VRP and to contact the qualified individual (QI) identified within their VRP.

61.     PRIDE KEEN nevertheless failed to do so. In its November 24 letter, the Coast Guard again reiterated these basic principles of incident response.  The letter closed with the Coast Guard reminding that it would continue to abate the pollution threat, up to and including requesting permission to destroy the vessel in-situ, unless PRIDE KEEN could demonstrate its ability to take over the response and salvage operations pursuant to their VRP and federal requirements.

62.     On November 25, 2018, PRIDE KEEN sought further clarification of the Sector Guam's November 24, 2018 letter and argued that the basis for its refusal to implement the Vessel Response Plan was an underlying coverage dispute with its insurer.

63.     For nearly a month, PRIDE KEEN failed to take required action.  On December 18, 2018, PRIDE KEEN confirmed its insurance coverage for the GRAND MARIANA to Sector Guam. However, Sector Guam remained in control of the response as PRIDE KEEN had neither activated its VRP, nor did it present the FOSC with a salvage plan that was acceptable by regulatory standards.

VERIFIED COMPLAINT                           15                              Case No.:

64.     On January 4, 2019, Sector Guam authorized PRIDE KEEN to deviate from its VRP to tender multiple salvage companies.

65.     On April 10, 2019, PRIDE KEEN finalized a contract with Resolve to remove the fuel and re-float/remove the GRAND MARIANA.

66.     On May 10, 2019, Sector Guam terminated the Administrative Order issued to PRIDE KEEN dated November 22, 2018, as PRIDE KEEN had signed a contract with a Resolve to remove the threat of oil discharge from the GRAND MARIANA and to either repair, refloat, or dismantle the vessel.

67.     On July 10, 2019, nearly nine months after the grounding, Resolve finally refloated the GRAND MARIANA and towed the vessel to a pier within Saipan Harbor. The foregoing facts collectively are referred to as "The GRAND MARIANA Incident and Removal Action" or simply the "Incident."

68.     The Incident was proximately caused, *inter alia*, by the acts, omissions, strict liability, gross negligence, and violations of federal construction and/or operating and/or safety regulations by the VESSEL and its owners, crew, agents, servants, employees, and others for whom DEFENDANTS were responsible, all within the privity and knowledge of DEFENDANTS.

69.     Specifically, and without limitation, DEFENDANTS failed:

(A) to report the Incident as required by law and the responsible party knows or has reason to know of the incident (33 U.S.C. § 2704(c)(2)(A));

VERIFIED COMPLAINT                    16                    Case No.:

(B) to provide all reasonable cooperation and assistance requested by a responsible official in connection with removal activities (33 U.S.C. § 2704(c)(2)(B));

(C) without sufficient cause, failed to comply with an order issued under subsection (c) and (e) of the Clean Water Act, 33 U.S.C. § 1321 *et seq*.; and

(D) breached the Ports and Waterways Safety Act, then codified at 33 U.S.C. § 1221 *et seq*., and implementing regulations, including, 33 C.F.R. Part 160 *et seq*.

70.     During the course of the GRAND MARIANA Incident and Removal Action, the United States expended substantial "removal costs" and sustained "damages" within the meaning of the OPA, 33 U.S.C. § 2702(b).

71.     The United States, by and through the FOSC, contracted with various entities, including but not necessarily limited to, Global Diving and Salvage, Inc., to respond to the GRAND MARIANA Incident and Removal Action. The United States paid these entities for the removal costs incurred in responding to the substantial threat of discharge of oil and, pursuant to the OPA, 33 U.S.C. § 2715, became subrogated to all claims, rights, and causes of action thereto.

72.     On April 14, 2020, NPFC sent Notice of Potential Liability Letters to PRIDE KEEN, IPI HOLDINGS, AND IPI CNMI, advising them that the USCG considered them Responsible Parties.

73.     The NPFC demanded reimbursement for all the outstanding removal costs and damages owed by the DEFENDANTS, and on May 10, 2020, NPFC sent all DEFENDANTS an invoice for $1,391,917.18.

VERIFIED COMPLAINT                     17                          Case No.:

74.     Despite this demand, DEFENDANTS have failed and refused to reimburse the costs and damages for which they are liable.

75.     As a result of the GRAND MARIANA Incident and Removal Action and as a result of the failure by DEFENDANTS to pay the full costs resulting from the Incident, in excess of $1,391,917.18 remains as an unpaid balance from monies due and owing to the United States, plus costs, Administrative and adjudicative costs, statutory attorneys' fees, plus interest thereon, plus such other additional amounts to be established according to proof at trial.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
## (OIL POLLUTION ACT OF 1990)

76.     Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

77.     Pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*, each responsible party and statutory guarantor for a vessel from which oil is discharged, or which poses the substantial threat of discharge, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States, is strictly liable for all costs, damages, and/or disbursements specified in the Act.

78.     Under the circumstances herein, DEFENDANTS are strictly liable to the United States of America, without limitation, for all the aforesaid costs, damages, and/or disbursements already sustained by the United States as a result of the Incident.

//

VERIFIED COMPLAINT                    18                    Case No.:

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST
## DEFENDANTS
## (OIL POLLUTION ACT OF 1990)

79.     Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

80.     Pursuant to the Oil Pollution Act of 1990, the Fund shall be subrogated to all rights, claims, and causes of action of claimants to whom it has paid compensation.

81.     As a result of the Incident, the Fund may in the future incur additional costs, damages, and/or disbursements by reason of claims for removal costs and damages to which the United States would be subrogated pursuant to the provisions of the Oil Pollution Act of 1990.

82.     Pursuant to the Oil Pollution Act of 1990, DEFENDANTS are liable to the United States of America for all such costs, damages, and/or disbursements, if any there may be, which may be sustained by the Fund by reason of claims against the Fund.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## DEFENDANTS
## (OIL POLLUTION ACT OF 1990)

83.     Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

84.     Pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2717(f)(2), the United States is entitled to, and hereby seeks, a declaratory judgment that is binding in any subsequent action or actions that DEFENDANTS, and each of them, are liable for removal costs and damages in any such subsequent action or actions.

VERIFIED COMPLAINT                    19                         Case No.:

**WHEREFORE**, the United States of America prays as follows:

1.     That United States of America be granted judgment against PRIDE KEEN, IPI HOLDINGS, and IPI CNMI  pursuant to the verified complaint of the United States herein, plus interests, costs, disbursements, and statutory attorney's fees;

2.     That the United States of America be granted declaratory judgment against PRIDE KEEN, IPI HOLDINGS, and IPI CNMI pursuant to the Third Cause of Action herein;

3.     The United States expressly reserves the right to amend this Complaint to add parties and/or causes of action, as may be necessary; and

4.     For such other relief as the Court deems just and proper in the premises.

Dated: May 6, 2021.              SHAWN N. ANDERSON
                                 United States Attorney
                                 MIKEL W. SCHWAB
                                 Chief, Civil Division
                                 JESSICA F. WESSLING
                                 Assistant U.S. Attorney

                                 BRIAN BOYNTON
                                 Acting Assistant Attorney General

                                 _____
                                 R. MICHAEL UNDERHILL
                                 Attorney in Charge, West Coast Office
                                 VICKEY L. QUINN
                                 Trial Attorney
                                 FRANK J. ANDERS
                                 Trial Attorney
                                 Torts Branch, Civil Division
                                 Aviation, Space & Admiralty Litigation
                                 U.S. Department of Justice

VERIFIED COMPLAINT              20                    Case No.:

Of Counsel

HELKEI HEMMINGER
National Pollution Funds Center
United States Coast Guard

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1

## VERIFICATION

2    R. Michael Underhill says:

3           I am one of the attorneys for plaintiff, United States of America, herein, and make

4
     this verification by authority for and on its behalf; I have read the foregoing Complaint,
5

6    know the contents thereof, and from information officially furnished to me believe the

7    same to be true.

8
            I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the
9

10   foregoing is true and correct.

11   Dated: May 6, 2021.                                         _____

12                                                              R. MICHAEL UNDERHILL

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT                              22                                  Case No.: